GEORGE LADD, *et al.*, v. FREDERICK BREWER.

1. VERDICTS—*When not Disturbed.* The well-settled doctrine, that where there is clear, positive and direct testimony to sustain every essential fact, this court will not set aside a verdict of a jury sustained by the district court, because of a seeming preponderance of testimony against it, is applicable to this case, and prevents a general reversal of the judgment.

2. MEASURE OF DAMAGES, *in Replevin.* Where the value of the use of property in an action of replevin is the proper basis for the assessment of damages for the detention, and no special use is suggested, and only the ordinary value of the use of such property claimed, *held,* that the loss of such value was the natural and necessary result of the detention, and that such value might be proved and recovered under a general allegation of damages, and without any averments of special damages.

3. FRAUDULENT SALES; *Title of Purchaser.* While it is true that a *bona fide* purchaser from a fraudulent vendee will sometimes acquire a good title, yet that implies a sale with transfer of title to such vendee, even though it be a voidable sale, and one that the original owner may by proper proceedings set aside, and has no application to a case where the transaction under which the pretended vendee claims is absolutely void and which passes no title away from the original owner.

4. ——— Thus, where B. is the owner of certain chattels, and J., claiming to be a partner or agent with authority to sell, sells and delivers such chattels to L., and it appears that J. was not a partner of B.'s, and had no authority to sell said chattels, and that B. was not estopped by his words and conduct from showing the truth, and had never ratified the attempted sale, *held,* that L. obtained no title, and could transfer none to a purchaser, *bona fide* or otherwise.

5. JUDGMENT, *in Replevin; When Error.* A judgment for the return of certain personal property, and damages for its detention, cannot be sustained against one who is shown by the testimony neither to have possession nor to claim any right to the possession.

*Error from Bourbon District Court.*

REPLEVIN, for four head of horses, brought by *Brewer,* as plaintiff, against *George Ladd, J. E. Trent,* and *G. E. Routt,* as defendants. The plaintiff claimed the horses as general owner. They were found in possession of defendant *Trent,* who held them for *Routt,* the latter claiming to own

them. *Trent* and *Routt* answered jointly, and gave a bond to retain possession. *Ladd* filed a separate answer. Trial at the December Term 1873, C. O. F., judge *pro tem.*, presiding. *Brewer* having given testimony tending to establish his ownership and right of possession, the defendants introduced evidence tending to show that the horses never belonged to *Brewer* individually, but to the firm of "Brewer & Jackson," and that Jackson had sold them to *Ladd*, who had sold them to *Routt*. There was also some evidence tending to show an agency on the part of Jackson to sell the horses. Verdict and judgment for *Brewer* for a return of the horses, and for $118 damages for detention. Defendants bring the case here on error.

*McComas & McKeighan*, for plaintiffs in error:

1. The verdict of the jury was not sustained by sufficient evidence, and the court should have granted a new trial. It is admitted that Jackson sold and delivered the horses to Ladd, and that Ladd sold and delivered them to Routt, before the suit. Whether Ladd acquired a title, depends upon the existence of one of two facts — a partnership between Brewer and Jackson, or an agency, with power to sell, on the part of Jackson. It seems to us that the evidence is overwhelming against the verdict on the partnership proposition. But whether so or not, upon the question of the agency alone, the evidence of Brewer himself shows that Jackson had power to sell the horses. Again, there was no evidence of a joint detention by Routt and Ladd, and the testimony is uncontradicted that Ladd had sold and delivered the horses to Routt before suit brought, hence the verdict should not have been against Ladd, even if good against the others.

2. The court erred in admitting testimony upon the value of the use of the property. Under the issues made by the pleadings, the only damages which plaintiff was entitled to were the damages implied by law. If he sought to recover special damages, it was necessary for him to make the proper averments in the petition, so that an issue might be joined

on them. No such issue was made. Moak & Van Sant. Pl. 244 to 248; Sedg. on Damages, 683; 28 Cal. 103; 5 Wis. 219; 4 Sandf. 263. · The plaintiff had only been kept out of the horses from ·October 18th 1873, to the day of trial in December of the same year. According to the cases cited under the issue joined, damages implied by law could only be given. The court gave no instructions on the subject of damages, and they were only authorized to find 7 per cent.·

The court erred in excluding questions and answers in Parsons' testimony. It was proper and competent to show anything which showed bias of the witness, either against Jackson, an important witness for plaintiffs in error, and who was responsible to Ladd in case of failure of title, or his bias toward the cause being tried; 6 N. Y. 345; 31 Geo. 688; 14 Gray, 31; 24 Ill. 444. The question was not objected. to; the answer had been given. A party cannot sit by and ·speculate as to the probabilities of an answer being in his favor, and when it is against him, have it excluded; 41 N. Y. 342.

3. The court erred in its instruction to the jury. The jury were instructed that if Jackson, as partner of Brewer, or agent, had the right to sell the horses, and Ladd purchased in good faith, that then Brewer could not recover. This was no doubt true; but it was defective in statement, and calculated to mislead. The good faith of Ladd was not a subject of inquiry, until bad faith, and an intention to defraud by Jackson, ·were first charged and proven. If Jackson was Brewer's partner, the sale was good, unless it was a fraudulent sale by Jackson, participated in by Ladd; 1 Pars. 184. This instruction, and the entire instructions, ignored Routt, although the evidence showed that he was the second vendee for a valuable consideration, and no attempt was made to connect him with any pretended fraud on the part of Ladd and Jackson. A *bona fide* purchaser from a fraudulent vendee acquires a good title; 19 Wis. 659; 42 Ill. 18; 48 Ill. 507.

*Hulett & McCleverty,* for defendant in error:

It would seem to be purely a question of fact upon which the court is asked to reverse this case; but we understand it to be the uniform practice of this court, and of all courts of last resort, never to disturb the verdict of a jury where there has been any evidence to sustain it, unless in very exceptional cases. But the verdict here is fully sustained by the evidence. One theory of the plaintiff was, that no partnership in fact existed between him and Jackson, who claimed to have sold the horses to Ladd, and that Ladd had full notice that Jackson had no power to sell or dispose of any of the property in the livery stable, except with Brewer's express consent. Another theory was, that the alleged sale by Jackson to Ladd, and Ladd to Routt, was a "put-up job" by them to swindle Brewer out of his horses. Of course fraud usually can only be proven by circumstances, and very frequently the only way the jury can determine that fact is by the manner and conduct of the parties and witnesses upon the stand. Evidence has its chief weight from the manner in which it is given; and it is not an impossible thing for a jury to believe one witness and disbelieve another, though each may be equally positive in his statement; but a flush of countenance—an uneasiness in the chair—an intonation of the voice—may stamp one as truthful, and the other untruthful; hence, the ruling of courts of last resort not to disturb the verdict of a jury, since the jury have the opportunity of judging not only the weight of the testimony but the credibility of the witnesses; 11 Kas. 47. In the case at bar the jury doubtless believed Brewer, and disbelieved defendant's witnesses.

The verdict is also sustained upon the measure of damages, since it is now the well-settled rule that where the chief value of property is its use, as of horses, then the value of such use is the proper measure of damages; 16 Wis. 80; 51 N. Y. 562. And under our statute no special plea is needed, and at most this court would, upon this point, do no more

than modify the judgment, reducing the damages for the detention.

If Jackson had no right to sell, then Ladd got no title, and could give none, especially in view of the suspicious circumstances attending the transaction from the first step taken.

The opinion of the court was delivered by

BREWER, J.: This was an action by defendant in error in the district court of Bourbon county to recover the possession of certain horses claimed to have been unlawfully taken and detained by the plaintiffs in error, defendants below. The principal point made by the learned counsel for plaintiffs in error is, that the verdict was not sustained by sufficient evidence. It appears that Brewer had a livery stable, and that one Jackson was in charge of it, Brewer's time being principally employed in a restaurant which he also owned. Jackson sold and delivered the property in question to Ladd, one of the defendants, who the next day sold and delivered it to Routt, another defendant. The defendants claimed that Jackson was a partner of Brewer's, or, if not, an agent with power to sell. To this point then, the relation of Jackson to Brewer, the principal part of the testimony is directed. Brewer's testimony was clear against any partnership or any authority to sell. True, he did not use the very words, "there was no partnership," but he says it was his livery stable, that hired men took charge of it for him, that Jackson was tending stable for him as a "hired man," stated the terms of arrangement between them, which showed Jackson an employé simply, and denied ever giving him authority to sell. Jackson testified that there was a partnership. Other testimony went to the statements, admissions, and conduct of these two parties. The jury found that there was no partnership or authority to sell. We cannot say that they erred. True, several witnesses testify to statements from Brewer indicating a partnership — some even to his speaking of Jackson as his partner. Still, we cannot say that this testimony compelled

a different verdict. Some of the witnesses were mixed up with this purchase; others, from the record apparently disinterested, may have so conducted themselves on the witness-stand as to carry little conviction of their truthfulness. At any rate, the case comes clearly within the rule, that where there is clear, positive and direct testimony to sustain every essential fact, this court should not disturb the verdict because of a seeming preponderance of testimony against it.

A second important question is, in the kind of testimony offered to prove the damages for the detention, and the basis upon which the jury assessed the damages. Evidence was admitted of the value of the use of the property from the time it was taken, down to the time of the verdict—the property having been retained by the defendants under a re-delivery bond—and the jury evidently returned such value as the damages for the detention. This, in the judgment of the writer of this opinion, is not the true rule; but a majority of the court hold otherwise. See the opinion in *Yandle v. Kingsbury*, recently filed, (ante, p. 196.) Counsel contended that such damages are special damages, and must be alleged in the petition, or proof thereof is inadmissible. We do not think so. By the detention the party is deprived of the use of his property; and whatever is the value of such use, the ordinary value of the use of such property, is the natural and necessary result of the detention. No special use was suggested, and the only proof was as to the ordinary value of the use of such property.

Several errors are alleged in the admission and rejection of testimony. Without noticing them in detail, it is enough to say that most of the rulings of the trial judge in this matter were unquestionably correct; that while some of them perhaps were technically wrong, yet that these were in minor matters, and whether right or wrong are not in our judgment of sufficient materiality to justify us in sending the case back for a new trial.

Some fifteen special instructions were asked by plaintiffs in error, all of which were refused; and the only instructions

given were embodied in a general charge prepared by the court. Most of the propositions embraced in these special instructions were given in the general charge, and of course the court was under no obligations to repeat them. One proposition however advanced by counsel, which the court refused to give, is made a special ground of criticism, and authorities cited in support of it. The proposition advanced is, that a *bona fide* purchaser from a fraudulent vendee acquires a good title; and it is insisted that, though the sale might have been avoided as to Ladd, the purchaser from Jackson, yet, not having been avoided while the property was in Ladd's possession, and Routt having purchased in good faith, he at least acquired a good title. The error lies in this: that doctrine applies only to cases of voidable sales, and never to those absolutely void. In a voidable sale, the title passes subject to the right of the vendor to proceed to set the whole transaction aside on account of the fraud practiced upon him; in a void sale, no title passes. Where the title passes, the fraudulent vendee may in some cases transfer a good title to a *bona fide* purchaser from him; but where no title passes the pretended vendee can transfer no title to a third party under any circumstances. Here, if Jackson was a partner, or an agent with authority to sell, a good title passed; or, if not being a partner, and not having authority to sell, Brewer so held him out to the world as to induce third parties to believe he was either a partner or had authority to sell; or, if without any authority he made the sale, and Brewer afterward ratified it, then also a good title passed. But on the other hand, if none of these things existed, then the pretended sale from Jackson to Ladd passed no title, was absolutely void; and Ladd, having nothing, could transfer nothing. To this effect were the instructions given, and they were correct. To have gone beyond, and added what the counsel claimed, would, we think, have been apt to mislead the jury, and suggested that as having support in the testimony which really we think had none.

Thus far we have noticed no error of sufficient moment to

justify a reversal of the judgment. As to one of the plaintiffs in error, George Ladd, however, we think the judgment cannot be sustained. He purchased the horses from Jackson, sold them to Routt, who put them in Trent's possession. Routt and Trent filed a joint answer denying the allegations in the petition. Ladd filed a separate denial. The motion also for a new trial was a joint and several motion. Ladd it appears neither had possession, nor claimed any right to the possession. We think therefore it was error to render judgment against him for the return of the property, and damages. True, he signed the redelivery bond with the other defendants, and one John Lawrence, and he may ultimately be made liable upon that bond for the amount of the judgment; but the execution of that bond gives no right to render a judgment in the present action against the obligors thereon. The judgment therefore against him must be reversed, and the case remanded for a new trial. As to the other plaintiffs in error, it will be affirmed.

One-half of the costs of this court will be taxed against the defendant in error, and one-half against the two plaintiffs in error against whom the judgment is affirmed.

· All the Justices concurring.