## N. S. WOOD, et al., v. SAMUEL P. DICKINSON.

1. CONTRACT; *Settlement, Binding; Waiver.* W., a stock dealer, purchased from D. twenty-two head of cattle to be weighed and delivered at Robinson. During the progress of the weighing a controversy arose regarding the correctness of the scales, W. contending that the weights given were too heavy, while D. said they were too light. The correctness of the scales was tested, and in some instances they showed that the weights given were too heavy. W. said he would not accept the cattle by those

weights, and proposed to D. that they be weighed at St. Joseph, where he intended to ship them. D. refused this proposition, stating that if W. would not accept the cattle by the weights at Robinson, he would drive them back home. W. then settled for the cattle by the Robinson weights, giving his promissory note for an unpaid balance. *Held,* In an action upon the note, that W., having agreed to settle by the Robinson weights, with actual knowledge of the condition of the scales, will, in the absence of fraud on the part of D., be bound by the settlement, and that the consummation of the agreement and the giving of the note operated as a waiver of any question growing out of the weighing of the cattle.

2. ———— A verdict based on conflicting evidence, and approved by the trial court, will not be disturbed.

### *Error from Brown District Court.*

ACTION by *Dickinson* against *Wood* and another, upon a promissory note. Trial at the January Term, 1884, and judgment for plaintiff for $101.34. Defendants bring the case to this court. The opinion states the facts.

*C. W. Johnson,* and *W. D. Webb,* for plaintiffs in error.

*James Falloon,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: Samuel P. Dickinson sued N. S. Wood and M. P. Rush in the district court of Brown county, to recover an alleged unpaid balance due upon a promissory note executed by Wood and Rush in favor of Dickinson for the sum of $900, and upon which there had been a payment of $804.15. The case was tried with a jury, and verdict and judgment were in favor of the defendant in error. After the testimony had been closed, the following instruction, among others, was given to the jury:

"The controversy arises out of a cattle contract and transaction, the written contract being set up as an exhibit to defendants' answer. The defendant Wood contracted to purchase of the plaintiff forty head of cattle, of which twenty-three were to be taken April 2, 1883, and the remaining seventeen from April 10 to 15, 1883; but by a subsequent agreement only twenty-two head were taken April 2, 1883, leaving eighteen

head to be taken afterward. The twenty-two head were, on April 2, 1883, driven by common consent to the Granger scales, in Robinson, to be weighed; and during the progress of the weighing, which was in five drafts, the defendant Wood complained that the scales were not working right, and were weighing too heavy, while the plaintiff contended that, owing to the way the 'P' was worked by the weighmaster, the weight given was too light. The defendant Wood said he would not stand by these weights, and proposed that the cattle be weighed in St. Joseph, Missouri, after they should be shipped there on the cars, and that the plaintiff should go there and see them weighed. The plaintiff refused this proposition, and told the defendant that if he would not take the cattle at those weights he would drive them back home. They then figured up the weight of the cattle as given by said Granger scales, and deducted three per cent. therefrom for shrinkage, as provided for by the contract; and defendant Wood gave to the plaintiff said promissory note for $900, with Marsh P. Rush, defendant, as security, and paid the balance of the price of the cattle in cash. Said defendant Wood then shipped the cattle to St. Joseph, Missouri, where they were weighed again in the evening, and they weighed considerably less than they weighed at Robinson. Under these circumstances, the giving of said promissory note was a waiver as to any question growing out of the weighing of the cattle, and you should find for the plaintiff for said balance due upon said promissory note, subject to the right of counterclaim hereinafter mentioned, unless you find that there was an accord and satisfaction of said note, as hereinafter stated."

The giving of this instruction is assigned as error. In the first place, it is claimed that the court therein assumed the existence of facts which were in dispute between the parties. This claim cannot be sustained. The facts stated by the court concerning the scales and the conduct of the parties at the time the cattle were weighed are substantially as testified to by the defendant Wood, and we find nothing in the evidence to contradict them. The instruction is further objected to because of the direction of the court that under the facts in the case, the giving of the promissory note by Wood concluded him as to any question which might arise with regard to the weighing of the cattle. We see no

1. Contract;
   settlement,
   binding;
   waiver.

valid objection to the instruction. The evidence in the record shows that it was not a case of mistake on the part of Wood, nor does it appear that Dickinson practiced any fraud upon him in the weighing of the cattle. Wood was engaged as a dealer in stock, lumber and grain at the town of Robinson, where the cattle were to be weighed and delivered. He had used the scales before that time, and had a superior opportunity over Dickinson—who was a farmer living some distance from Robinson—to know what the condition of the scales was. It does not appear that Dickinson even suggested what scales in Robinson should be used. Wood knew, or claimed to know, that the scales used did not weigh correctly. In his testimony he states that while they were weighing the cattle he insisted that the weights given were too heavy. He further says that after the question was raised, the scales were tested by weighing several men whose weight was known, and that sometimes the scales gave correct weight, while at other times, and when the men stood on a different part of the platform, the weight given was too heavy. He then insisted that the cattle should be weighed at St. Joseph, Mo., to which place he intended to ship them, but Dickinson would not give his consent. It appears that there were other scales in Robinson upon which the cattle might have been weighed. The only objection to using the other scales was that they were not inclosed for weighing live stock; but it appears from Wood's testimony that the "frames" inclosing the Granger scales might with little inconvenience have been moved to the other scales, which were only a hundred yards away. He says that nothing was said by him about weighing on the other scales, because he preferred to have the cattle weighed in St. Joseph. Dickinson still insisted that he would not weigh and deliver the cattle at St. Joseph, and that if Wood refused to accept them by the Robinson weights he would drive them back home.

After this controversy, and after learning of the condition of the Robinson scales, Wood consented to settle and did settle with Dickinson in accordance with the Robinson weights.

Together they figured up the amount due by these weights, and Wood paid part of the same in cash, and executed the note in question for the balance.

He need not have taken the cattle as they were weighed to him. Under his contract he was entitled to their delivery measured by the correct and standard weight. Instead, however, of insisting upon this right, he elected to end the controversy, and to take the cattle weighed upon scales which he had discovered and asserted were untrue. Afterward he claimed a credit on the note for the difference as shown by the St. Joseph weights. But at the time the note was given nothing was said about re-weighing the cattle at St. Joseph, nor that there should be any other or future adjustment between them concerning the weighing of the cattle. Indeed, Wood, in his testimony, states that "when the note was drawn up nothing was said about correcting the note according to St. Joseph weights. He drew up the note, and I suppose he would not have accepted the note with any promise for correction to be made according to St. Joseph weights."

On the testimony, then, it cannot be doubted that Wood consented and agreed to abide by the weights taken at Robinson, and that this consent was given by him with actual knowledge of the infirmity of the scales upon which the cattle were weighed. An examination of the testimony makes it equally clear that in this agreement he was not deceived or misled to any extent by Dickinson. There being no fraud, the agreement must be held to be binding, and to have operated as the court below ruled as a waiver of any question growing out of the weighing of the cattle.

It is next urged by the plaintiffs in error, that by the testimony it is shown there had been a full accord and satisfaction of the promissory note, and therefore the verdict should have been in their favor. There was credited upon the note a payment of $804.15, which was the amount due according to the St. Joseph weights. It seems that after Wood had returned from St. Joseph, where he had shipped and weighed the cattle, he informed Dickinson of the difference in the weights, and

also told him that he would not pay the face of the note, but only the amount determined to be due by the weighing at St. Joseph. It is here claimed by the plaintiffs in error on the testimony, that Wood proposed to pay and did pay the sum of $804.15, and that Dickinson agreed to accept that sum as full payment of the note. If such was the fact, it would be a full accord and satisfaction of the promissory note as between the parties to the transaction, and no recovery could be had of the balance apparently due thereon. But Dickinson denies that he agreed to accept the $804.15 as a full payment of the note. Thus there was a question raised for the determination of the jury; and their finding, as has been seen, was in favor of the defendant in error. Reading the testimony as it appears in the record, it seems to us to preponderate in favor of the claim made by the plaintiffs in error. But there was 2. Verdict, not disturbed. some legal testimony which tended to support the theory of the other side; and under the well-established rule that "where there is clear, positive and direct testimony to sustain every essential fact, this court will not set aside a verdict of a jury sustained by the district court, because of a seeming preponderance of testimony against it." (*Ladd v. Brewer*, 17 Kas. 204.)

The judgment of the district court is affirmed.

All the Justices concurring.