## PEERLESS MACHINE COMPANY v. S. GATES.[1]

May 15. 1895.

Nos. 8652—(81).

**Evidence.**

*Held*, there was sufficient evidence to sustain a verdict for the defendant.

**Same—Conclusion of Witness.**

*Held*, it was error to admit as evidence the answers to certain questions calling for the mere conclusion of the witness.

**Same.**

But *held*, this rule does not apply to a certain question asked for the purpose of proving a negative, and it was error to exclude the answer to the question.

**Replevin—Damages.**

The plaintiff, by replevin proceedings, wrongfully took from the defendant a threshing machine, and retained it until after the trial of the action. It does not appear that he used it, or did not properly store or care for it, during the detention. *Held*, the measure of damages for such detention is the fair rental value of the machine, less the damages which would result to it from the extra wear and tear caused by the use of it while so rented.

**Possession by Agent.**

Possession of property by an agent is not evidence that the agent has authority to sell the property.

Appeal by plaintiff from an order of the district court for Clay county, Ives, J., denying a motion for a new trial. Reversed.

*George E. Perley, John E. Greene,* and *Newman, Spalding & Phelps,* for appellant.

*C. A. Nye,* for respondent.

CANTY, J.[2] This is an action of replevin for the recovery of the possession of a threshing machine. Both parties claim title from the same vendor,—the Geiser Manufacturing Company. Plaintiff claims that it purchased the machine from the Geiser Company July 17, 1892, and defendant claims that he purchased it from the Geiser Company, and took possession of it, prior to that time, to wit, in October, 1891. On the trial, defendant had a verdict, and

---

[1] Reported in 63 N. W. 260.        [2] Buck, J., absent, took no part.

from an order denying its motion for a new trial plaintiff appeals.

1. There is evidence tending to prove that defendant got the machine from the Geiser Company for the purpose of putting it on trial, and introducing this class of machines among the farmers. However, both parties agree that defendant first took the machine on trial at the agreed price of $480, and that after trial he refused to accept it. Defendant claims that after this he purchased the machine from the Geiser Company, through one Lyttle, who he claims was its agent, for the price of $240, from which was to be deducted a discount of $50, and also $30 which he had paid for freight. Plaintiff denies this, and claims that there is no evidence that Lyttle had any authority from the Geiser Company to sell the machine, and therefore no evidence to sustain the verdict. The evidence of his authority is certainly not very satisfactory. However, plaintiff introduced evidence tending to prove that one Bell was the "traveling agent" of the Geiser Company, and defendant testified that, in the presence of Bell, Lyttle represented to plaintiff that "he was the agent for the company, and had full control in this part of the country." We are of the opinion that, under all the circumstances of the case, the question of Lyttle's authority was for the jury.

Several rulings of the court are assigned as error.

2. The son of defendant was a witness on his behalf, and by his counsel was asked the question: "State whether your father agreed to keep the machine, and did keep it, under this agreement" (the alleged agreement with Lyttle). Plaintiff objected to the question as incompetent, which objection was overruled, and the witness answered, "He did." This was error. The question called for the mere conclusion of the witness. The same may be said of the ruling of the court permitting defendant to testify that the machine was in Lyttle's control when it was in Fargo, in Magill's warehouse, where it had been stored by the Geiser Company. It did not appear that Lyttle had any actual possession of the warehouse, or anything in it.

3. Defendant admitted that no contract or memorandum in writing was ever made relating to his purchase of the machine from Lyttle. One Morganthal, the secretary of the Geiser Company, was a witness on behalf of plaintiff, and by its attorney was asked

the question: "State whether or not any person or persons acting for you, as your agent or otherwise, had the right or authority to make the sale of a thresher, or any piece of machinery, to S. Gates, without first having submitted a printed order for the same." It was error to exclude the answer. While the question called for the conclusion of the witness, it was for the purpose of proving a negative, and there is often no other way of proving a negative.

4. At the time of the commencement of the action, by means of the provisional remedy, the plaintiff, through the sheriff, took the machine from defendant, and has ever since kept possession of the same. Defendant claims damages for such detention, and was permitted, against plaintiff's objection, to prove that the fair rental value of the machine for the threshing season of 1892 was from $300 to $350; and the court charged the jury, in substance, that the measure of damages for such detention was the fair rental value of the property during the time it is so detained. While this is the correct rule of damages in many cases, it is not in the case of the detention of an article which wears out as rapidly by use as does a threshing machine. It does not appear that the plaintiff used the machine while it so detained it. If it did so appear, the rule laid down would be correct. But, for all that appears, the machine may have been carefully housed and stored during all of this time, and subject to no wear or tear, except such deterioration as would result from keeping it over, properly stored. It seems to us that, under the facts of this case, the correct rule is, what is the fair rental value of the machine, less the damage which would result to it from the extra wear and tear caused by its use?

5. Several parts of the charge are excepted to. The court charged the jury as follows: "The court charges you that the possession of the property by a man is presumptive evidence of ownership,—presumptive evidence of his right to sell it; and there is only one place where such a thing can be questioned, and that is where the property has been stolen, and there is no such claim here. Consequently, the property being in possession of Lyttle, he had a right to sell or dispose of it." "Plaintiff asks for certain instructions: * * * Second. 'That it is the duty of the party who deals with one not a general agent to inquire into the nature and extent of his agency, and to deal with the agent accordingly.' This the court

gives to you, with this modification: that where the party represents himself to be an agent, and has the property sought to be disposed of in his possession, that the rule is entirely altered. Third. 'That no man has a right, in dealing with an agent, to rely upon his own statements as to his authority.' The court gives you that, with the same modifications just stated. Fourth. 'You are instructed that the defendant has no right to rely upon the declarations of Lyttle as to his agency.' This the court gives you, with the same modification: that, if he had made this statement about any other property than that which he had in his possession, it would have been good law; but. with the property in his hand and possession, the rule is otherwise. Fifth. 'You are instructed that if the agent of the Geiser Company, Lyttle, was only a special agent, in dealing with him it was incumbent upon Gates to inquire into Lyttle's authority, and not rely upon his own declarations and acts.' This the court gives you, with the modifications stated before."

From this it will be seen that the trial court held, as a question of law, that Lyttle was in possession of the machine when he sold it to defendant, while there is hardly a shadow of evidence in the case tending to show that he ever was even in apparent possession of the machine. But, even if he was in possession of it, his possession was the possession of his principal. None of the indicia of ownership was given to him. He did not pretend to be the owner of the property, and his apparent possession of it was not evidence of his authority to sell it. Even if Lyttle, having such possession, had represented himself to be the owner of the property, and had sold it as such owner, the purchaser would have no title, even though there was apparently nothing to put him on his guard. Greene v. Dockendorf, 13 Minn. 66 (70).

This disposes of all the questions raised having any merit. The order appealed from is reversed, and a new trial granted.