Ocala F. &. M. Works v. Lester and Daniels—Syllabus

THE OCALA FOUNDRY & MACHINE WORKS, A CORPORATION, NOBLE W. HARRISON & E. C. SMITH, PLAINTIFFS IN ERROR, v. P. R. LESTER AND R. G. DANIELS, COPARTNERS UNDER THE FIRM NAME OF OCKLAWAHA LUMBER COMPANY, DEFENDANTS IN ERROR.

1. The lien upon personal property given by the Revised Statutes of 1892 to a laborer or mechanic who performs labor and furnishes materials for repairing it, does not as between the parties thereto expire at the end of three months from the time the labor was performed or materials furnished, even though the laborer or mechanic retains possession of the property for that period of time, nor does the latter lose the right to enforce his lien by proceedings at law or in equity, within or subsequent to that period but within one year, even though he retains possession, or shall have retained possession for the full period of three months.

2. Three months retention of the possession of personal property by a mechanic who has repaired it, though mentioned as a remedy for enforcing the mechanics lien by section 1743 Revised Statutes of 1892, is not designed as a full and complete remedy, but merely as a means of exerting moral pressure for inducing or hastening voluntary payment from the debtor. The other remedies given by that section are not inconsistent with the right to retain possession, but are cumulative, and so long as the retention of possession fails to secure payment of the debt, it does not extinguish or discharge the lien, nor preclude resort to other remedies provided.

3. The existence of a lien upon personal property does not carry with it the right of possession, if a statute otherwise provides; therefore the lien may exist in favor of a mechanic, consistently with the right of the debtor to possession of the property, if such is the intention of the statute.

4. Under section 1743 Revised Statutes of 1892, where posses-
sion of personal property has been retained by the laborer
or mechanic for the period of three months after the lien
attached though the lien still continues as between the
parties, the right to retain possession as against the con-
sent of the debtor expires, and upon a demand for pos-
session made by him after the expiration of such period
he may maintain replevin for such possession.

5. As a general rule, interest on the value of the property
wrongfully detained, is the proper measure of damages in
an action of replevin, but where the use of the property
is valuable, the fair reasonable ordinary use value of the
property estimated by the market value of such use dur-
ing the period of detention, is the proper measure of dam-
ages. Where, however, the property was not in fact used,
but was cared for by the party during its detention, so
that its condition at the time of the trial is as good as
when the illegal detention began, there should be deducted
from the market value of the use, taken as the basis for
damages, a reasonable sum for deterioration in the condi-
tion of the property had it been used, and the necessary
repairs and expenses which the other party would have in-
curred if it had been used during such period of detention.

6. Upon an issue as to the fair, reasonable, ordinary use value
of a tram engine designed and used for saw mill pur-
poses, it is error to admit as proof of the use value of such
tram engine evidence of the market rental value of a
railroad locomotive engine larger, heavier, more expen-
sive and designed primarily for use by railroads, even
though such locomotive engine could be used to accom-
plish the same work as the tram engine.

7. Under the form of the conclusion of a declaration to recover
specific personal property prescribed by section 1056 Re-
vised Statutes of 1892, the plaintiff may recover as dam-
ages for detention the fair reasonable ordinary value of
the property detained to be estimated by the market value
of such use without alleging special injury, but such alle-
gation is not sufficient to enable the plaintiff to recover,
without alleging special injury, the amount it actually cost

him, in excess of the market use value, to procure other means of carrying on particular work or a particular business in which the property was used or intended to be used.

8. Damages which are not the natural and usual consequences of an illegal detention of personal property, but which arise only because of unusual and special circumstances, can not be recovered under general allegations of damage, but the special circumstances must be alleged.

9. Under a declaration in replevin alleging a stated amount to be the value of the property it is error to enter judgment for a greater sum for such value, and this is true even though the defendant's witnesses may have testified that the value was the sum mentioned in the judgment.

This case was decided by Division A.

Writ of Error to the Circuit Court for Marion County.

The facts in the case are stated in the opinion of the Court.

*Allred & Davis,* for Plaintiffs in Error.

*R. L. Anderson,* for Defendants in Error.

CARTER, J.   This was an action of replevin instituted by the defendants in error against The Ocala Foundry & Machine Works, one of the plaintiffs in error, in the Circuit Court of Marion county. The defendant gave its forthcoming bond, with Noble W. Harrison and E. C. Smith the other plaintiffs in error as sureties, and thereby secured redelivery of the property. The amended declaration upon which the trial was had alleges "that the defendant on

the 25th day of September, 1902, in the county aforesaid wrongfully took the goods and chattels, to-wit: one dummy or tram road locomotive engine of Fifield make, of the plaintiff's, of the value of $750.00 and wrongfully detained the same until the beginning of this suit, and unlawfully withholds possession thereof, and refused to deliver the same to plaintiffs. And plaintiffs claim a return of said goods and property or their value, and $1,500, for their detention." The defendant pleaded not guilty, the parties waived a jury and submitted the question of plaintiffs' right to recover to the court upon an agreed statement of facts. The court found that plaintiffs were the owners of the property and entitled to its possession. The parties again waived a jury and agreed that the court should ascertain the amount of damages to be awarded to the plaintiffs, and after hearing testimony submitted by the parties, the court assessed plaintiffs' damages at $1,500 for the detention of the property and fixed the value of the property at $1,200. Defendant interposed its motion for a new trial, which was overruled, and judgment was entered that plaintiffs have and recover of and from defendant the possession of the property, and $1,500 damages for detention and costs of suit, and that plaintiffs recover from defendant and his sureties on the forthcoming bond the sum of $1,200, the value of the property. From this judgment the present writ of error was taken.

It appears from the agreed statement of facts that the plaintiffs were the owners of the property; that the defendant had performed certain labor in repairing same; that the repairs were completed on September 25th, 1902, after which, and during the same month, the plaintiffs tendered defendant $285.00 demanding possession of the

property; that this tender and demand were refused by defendant because it claimed there were $580 due instead of the smaller sum tendered; that plaintiffs again made a tender of the same sum on Februarry 7, 1903, which was refused for the same reason, and on the same day the plaintiffs instituted the present action to recover possession of the property. It also appears that there was a dispute between the parties as to the amount due for repairs, plaintiffs claiming that the sum they tendered was the full amount, while defendant claimed $580; that the defendant had filed its bill in equity to enforce its alleged lien on October 2nd, 1902, which bill was still pending; and it was also agreed that the defendant had a lien upon the property for the sum really due for such repairs unless the lien had been extinguished by reason of defendant's retention of possession for more than three months after the repairs were completed, or by reason of the tenders of money already mentioned. It does not appear from the agreed statement how much was really due for repairs.

There are twenty assignments of error, some of which are not argued, and will, therefore, be treated as abandoned.

It is insisted under the third and fourth assignments of error that the court erred in its finding that plaintiffs were entitled to recover possession of the property. In support of this contention it is argued, that as defendant had a lien upon the property for repairs, it was entitled to retain possession until the amount due for such repairs was paid. The agreed statement of facts admits that the defendant performed labor upon the property which entitled it to a lien under the law relating to mechanics' liens, and that such a lien existed on the day the

work was completed September 25, 1902, and plaintiffs do not deny that during the period of three months after the work was completed the defendant might have retained possession of the property if no other remedy was invoked in the meantime, but they do contend that by filing its bill to foreclose its lien the defendant elected not to retain possession, and that its retention of possession for three months discharged the lien, whereby its right to possession ceased, and that plaintiff could maintain replevin for possession. To determine the questions involved it will be necessary to construe certain provisions of the Revised Statutes of 1892 relating to the acquisition of and remedies for enforcing mechanics' liens upon personal property.

It is provided that "as against the owner absolute or limited, of the property, real or personal, upon which a lien is claimed or person deriving through his death, or purchasers or creditors with notice, the lien hereinbefore provided for shall be acquired by any person in privity with such owner by the performance of the labor or the furnishing of the materials." "There shall be no lien upon personal property as against purchasers and creditors without notice unless the person claiming the lien be in possession of the property upon which the lien is claimed, in which case the lien as against creditors and purchasers without notice shall continue so long as the possession continues, but not for a period longer than three months after the performance of the labor or the furnishing of the materials." "All liens provided for by this Chapter, either upon real or personal property, shall be enforceable by persons in privity with the owner: 1. By a retention of possession for a period not exceeding three months, of the property upon which the lien has attached, by the person entitled to such lien, if he were

in such possession at the time the lien attached. 2. By a bill in equity. 3. By an ordinary suit at law and the levy of the execution obtained therein on the property on which the lien is held. 4. By a suit at law in which the declaration shall state the manner in which the lien arose, the amount for which the lien is held, the description of the property and a prayer that the property be sold to satisfy the lien." Sections 1742-1743 Rev. Stats. of 1892, as amended by Chapter 4582, Acts of 1897. "Whenever any person shall entrust to any mechanic or laborer, ma-terials with which to construct, alter or repair any article of value, or any article of value to be altered or repaired, such mechanic or laborer, if such article be completed and not taken away and the fair and reasonable charges not paid, may after three months from the time such charges become due, sell the same, and such sale shall be at public auction for cash. But before any such sale such mechanic or laborer shall give public notice of the time and place thereof by advertisements posted for ten days in three public places in the county, one of which shall be the court house and another in some conspicuous part of his shop or place of business, and the proceeds of such sale, after payment of charges for construction or repair, with the costs of such sale, shall if the owner be absent, be deposited with the clerk of the Circuit Court for such county, where the same shall remain subject to the order of the person legally entitled thereto, and the clerk shall be entitled to receive from all the proceeds so deposited with him five per centum on such proceeds for the care and disbursement thereof," "When there has been no record of a notice of a lien suit to enforce such lien (if it exist without such record) must be brought within twelve months from the performance of the work or the furnish-

ing of the materials, and if there has been such record, such suit must be brought within twelve months from the time of such record." Sections 1745-1748 Rev. Stats. of 1892.

The proper construction of these provisions requires us to hold that the lien upon personal property does not as between the parties thereto expire at the end of three months from the time the labor was performed or materials furnished, even though the laborer or mechanic retains possession of the property for that period of time, nor does the mechanic or laborer lose his right to enforce his lien by proceedings at law or in equity within or subsequent to that period but within one year, even though he retains possession or shall have retained possession for the full period of three months. This is made clear by the provisions of section 1745 which authorizes him, after the three months have expired, to sell the property even without judicial proceedings if the possession still remains with him. It is true that the three months retention of possession is mentioned as one of the remedies for enforcing the lien, but this matter of retention of possession is not designed as a full and complete remedy, but merely as a means of exerting moral pressure for inducing or hastening a voluntary payment from the debtor. The remedies given are not alternative nor inconsistent but cumulative, and so long as the retention of possession fails to bring results, its employment is no bar to the use of the other remedies provided. See West v. Fleming, 18 Ill. 248, S. C. 68 Am. Dec. 539; Murray v. Rapley, 30 Ark. 568. See also Ocala Foundry & Machine Works v. Lester, decided at this term. But when possession has been held for a period of three months, the mechanic or laborer has no right under the statute to longer retain the property as against the consent of the debtor. Though

the lien still exists the right to retain possession expires, and upon demand by the debtor, he has a right to have the possession.   This was not the rule of the common law, but it is the rule under the statute, which expressly limits the right of possession to a period not exceeding three months.   The existence of a lien does not carry with it the right of possession, if the statute otherwise provides, and, therefore, the lien may exist in favor of the mechanic consistently with the right of the debtor to possession, if such is the intention of the statute.  Pratt v. Tudor, 14 Texas 37.   When the plaintiffs in this case, who were admitted to be the owners of the property, made a demand upon the defendant for its possession after the expiration of the three months retention of possession by the latter, they became entitled to its possession, and entitled to maintain their action of replevin therefor.   There was, therefore, no error in the finding that plaintiffs were entitled to recover the possession of the property from the defendant.

The plaintiffs were engaged in the saw mill business, and the engine in controversy had been used by them in hauling logs to the mill before it was placed in the defendant's hands for repair.   Upon the question of damages the plaintiffs were permitted to prove that the engine, if in good running order and condition, was of sufficient power and capacity to supply logs for plaintiffs' mill as it had been operated during the years 1902 and 1903, and up to the time of the trial; that plaintiffs' mill track was standard gauge, and the distance logs were hauled was from three to ten miles; that during the years 1902 and 1903, and up to the time of the trial, it had been necessary for plaintiffs to hire a locomotive engine for logging their mill, in order to carry on their business; that it would

not have been necessary to hire such a locomotive if plaintiffs had had the use of the Fifield engine now in suit, in good running order; that the market value or usual price charged during the years 1902 and 1903 and up to the time of the trial, for the rent or hire of such a locomotive engine as would have the capacity to log plaintiffs' mill was $150.00 per month, and that plaintiffs had been unable to hire any other engine for less than $150 per month. They were also permitted to put in evidence a number of bills made out against plaintiffs by one W. E. Boone, in which plaintiffs were charged rent at the rate of $150 per month for engines used during the years 1902 and 1903. This evidence was all objected to by the defendant, and upon exceptions taken to the ruling admitting it various assignments of error are based. These rulings require us to determine the proper measure of damages applicable to the case.

Generally speaking, interest on the value of the property wrongfully detained, is the proper measure of damages in an action of replevin. But where the use of the property is valuable, the rule stated does not furnish the plaintiff adequate compensation, and in such cases he is entitled, not to interest on the value, but to the value of the use. Shinn on Replevin, section 646; 4 Sutherland on Damages, 3rd ed., section 1144; 2 Joyce on Damages, section 1224; Cobbey on Replevin, sections 886, 887, 888; 24 Am. & Eng. Ency. Law, 2nd ed., 514; Morgan v. Reynolds, 1 Mont. 163; Schrandt v. Young, 62 Neb. 254, 86 N. W. Rep. 1085; Yandle v. Kingsbury, 17 Kan. 195; Bell v. Campbell, 17 Kan. 211; Farrar v. Eash, 5 Ind. App. 238, 31 N. E. Rep. 1125; Northrup v. Cross, 2 N. Dak. 433, 51 N. W. Rep. 718; Allen v. Fox, 51 N. Y. 562. In Clark v. Martin, 120 Mass. 543, it was held that without alleg-

ing special damages the plaintiff may in replevin recover such damages for the detention as, the use of the property, considering its nature and character, was worth to him during the time of the detention, while in Minnesota it is held that plaintiff may recover the reasonable value of the use of property, but that such damages are special and must be pleaded in order to authorize their recovery. Qualy v. Johnson, 80 Minn. 408, 83 N. W. Rep. 393; Nash v. Larson, 80 Minn. 458. Many authorities hold that the true measure of damages in such cases is the fair reasonable ordinary value of the use of the property, and that such damages may be recovered under the general claim without special allegations of injury. This fair reasonable ordinary value of the use must be estimated by the market price of such use during the detention. Perhaps in special cases this rule may give a plaintiff inadequate damages, but a more liberal one would inflict upon a defendant in most cases, damages which could never have been anticipated, and which in their assessment would entail a departure from well known principles governing the measure of damages, while a less liberal rule would enable a defendant to make a profit from his own wrong and deny to a plaintiff damages which naturally and certainly follow from a wrongful invasion of his rights. In our opinion this rule is in accordance with principle and with the weight of authority, and is applicable to the present case. We may remark, however, that where the property was not in fact used, but was cared for by the defendant during its detention, so that its condition at the time of the trial is as good as it was when the illegal detention began, which the defendant contends is shown by the evidence in this case, there should be deducted from the market value of the use taken as the basis for

14 S C

damages a reasonable sum for the deterioration in the condition of the property if it had been used, during such period, and the necessary repairs and expenses which plaintiff would have incurred if it had been rented during that period. As supporting these views see Qualy v. Johnson, *supra;* Nash v. Larson, *supra;* Peerless Mach. Co. v. Gates, 61 Minn. 124, 63 N. W. Rep. 260; Anchor Milling Co. v. Walsh, 24 Mo. App. 97; Sebree v. Smith, 2 Idaho 329, 16 Pac. Rep. 915; Chauvin v. Valiton, 8 Mont. 451, 20 Pac. Rep. 658; Adams v. Wright, 74 Conn. 551, 51 Atl. Rep. 537; Stanley v. Donoho, 16 Lea (Tenn.) 492; Ladd v. Brewer, 17 Kan. 204; Burkeholder v. Rudrow, 19 Mo. App. 60. See, also, Farrand & Votey Organ Co. v. Board of Church Extension of M. E. Church, 18 Utah 29, 54 Pac. Rep. 818. Governed by the rules state we think the general claim for damages in the declaration is sufficient to permit a recovery for the use value of the property as above explained, and that the testimony if it tended to prove that the value was not objectionable as proving special damages not alleged in the declaration as contended by the defendant. But we think the testimony should have been excluded because it tended to prove the use value of a locomotive engine, and not of the engine in controversy. The locomotive engine occupies a much wider field of usefulness than a mere tram engine, it is much more expensive; is primarily designed for use on ordinary railroads, and the demand for it must, therefore, be much greater than for an engine of the character of the one in controversy. As the primary purpose of a locomotive is for use on railroads, its use value would naturally be governed by the market value of its use for railroad purposes, and its occasional use by saw mills would not decrease its rental value to that commanded

by a tram engine more apropriate for saw mill work, not adapted to railroading, and smaller, lighter and less expensive. If an ordinary farm horse was unlawfully detained the measure of damages would be the use or rental value of ordinary farm horses, and not that commanded by a blooded animal valuable for breeding purposes. The rental or use value of a locomotive engine is not the proper standard for measuring the rental or use value of a train engine like the one in controversy, consequently the court erred in admitting the evidence objected to. The fact that no other engine could be procured capable of doing the work which the tram engine was used to accomplish at a price equal to the fair reasonable market value of the use of the tram engine does not enable plaintiffs under the allegations of the present declaration to recover as damages the amount actually paid out by them for the more expensive engine, even if with proper allegations the law would authorize the recovery of the larger sum under those circumstances, a question not presented for decision in this case. The right to recover such damages would depend upon special and unusual circumstances such as that the plaintiffs were deprived of the use of the property in some particular business or some special undertaking, and could not procure other means to accomplish the same results without extraordinary expense, that is without paying more than the market value of the use of the property withheld, and this would constitute special damage which could only be recovered under appropriate allegations. See 13 Cyc. 175-176; 18 Ency. Pl. & Pr., 543-544. Such damages are not the natural and usual consequences of the detention, but arise only because of unusual and special circumstances, and can, therefore, be recovered only under special allegations.

Plaintiffs contend that the language in their declaration "and the plaintiffs claim a return of said goods and property or their value and $1,500 for their detention" is the form prescribed by section 1056, Rev. Stats. of 1892. That section merely prescribes the form of the conclusion of the declaration. It provides that if the action is brought to recover specific goods the declaration "shall conclude as follows, or to the like effect." So far as the question of damages is concerned, the section merely prescribes the form of the *ad damnum* clause, and this form as we hold is sufficient to recover general damages, but there is nothing in the language of the statute nor the form given which by remote implication can be construed as repealing the general rule which requires special allegations as a basis for the recovery of special damages. If the body of the declaration contains the special allegations the conclusion prescribed is in form sufficient to embrace a claim for special damages, but otherwise, it must be confined to general damages. As the result of the views expressed, we hold that the court erred in admitting the testimony complained of.

The declaration alleged the value of the property to be $750. The court found the value to be $1,200, and entered judgment for that sum as the value. This was error, as the plaintiffs could not without an amendment of the declaration with respect to value obtain judgment for a greater sum than that alleged, *viz*: $750. Younglove v. Knox, 44 Fla. 743, 33 South. Rep. 427; Cooper v. Livingston, 19 Fla. 684. It is immaterial that the defendant's witnesses may have valued the property in excess of the sum alleged in the declaration. That would furnish a very good reason why the value should be fixed at the sum claimed in the declaration, but no reason for giving the plaintiffs more than they claimed in their pleadings.

The extent of their recovery is limited by the allegations in the pleadings, and if they choose to stand upon such pleadings without amending them, they must take their judgment in conformity with the allegations, even though the testimony might authorize greater relief than was claimed.

For the errors pointed out the judgment is reversed and a new trial awarded.

WHITFIELD, C. J., and SHACKLEFORD, J., concur.

TAYLOR, P. J., and HOCKER and COCKRELL, JJ., concur in the opinion.