A. C. LESTICO v. ALBERT H. KUEHNER.[1]

December 16, 1938.

No. 31,788.

[1] Reported in 283 N. W. 122.

126

*Joseph P. O'Hara*, for appellant.
*Everett L. Young* and *T. O. Streissguth*, for respondent.

STONE, JUSTICE.

In this personal injury action the verdict went for plaintiff. Defendant appeals from the order denying his motion for judgment notwithstanding or a new trial.

Very early in the morning of June 4, 1937, plaintiff and defendant left Gaylord in the latter's car en route to Alexandria. After having travelled something over 30 miles, the machine suddenly left the highway on the right side and overturned against the embank-

ment. Plaintiff avers that his resulting injuries were proximately caused by the negligence of defendant in driving at an excessive speed and failing to have his car under control. Nothing more specific was charged by the complaint.

At the place of the accident the north and south highway was smoothly gravelled and the 20-foot roadway well compacted by travel. There was no loose gravel. There had been a sprinkle of rain during the night, but there is no evidence that defendant's car skidded. Some 270 feet south from where the vehicle left the road it is joined from the east by a town road. At or near that point there was a slight depression two or three inches deep and many more wide caused by water running across the highway from the intersecting road. When this point was reached defendant was traveling with his left wheels on or close to the median line. There was evidence from tracks, which witnesses said were made by defendant's machine, that immediately after this depression was crossed defendant's course was changed to the right. There is other evidence that he continued straight on until about 40 feet from the point where his machine left the road.

Defendant testified, in substance, that his car suddenly swerved to the right, and, when his right front wheel got into a low ridge of surfacing material (probably left by the blade of a grader), he lost control and could not get back onto the highway. Plaintiff stated frankly that the whole affair was at best a matter of a "split second."

The evidence would have justified the jury in believing that defendant was driving at more than 45 miles per hour. The estimates of plaintiff and defendant taken together (there were no other witnesses as to speed) range from 40 to 50 miles per hour. Defendant insisted that he checked his speed before coming to the shallow depression already referred to, which the witnesses characterized as a "washout." At best it appears to have been shallow in proportion to its width.

After the accident the tire of defendant's left rear wheel was found deflated, punctured by a No. 10 wood screw, which had gone through the casing perpendicularly, or nearly so, to the tread. It

had torn a gash in the inner tube at least two inches long. Both car and tire were new, with only some 1,500 miles to their credit.

For the reasons now to be stated, we consider that the order appealed from must be reversed and the case remanded for a new trial.

■ The jury was instructed that under the statute, L. 1937, c. 464, § 28, 3 Mason Minn. St. 1938 Supp. § 2720-178 (the highway had not been "zoned," as permitted by the same statute), the maximum speed was 45 miles per hour. They were then charged that to exceed that "is *prima facie* evidence that the car is not being operated in accordance with the requirements which I read to you. In other words, it was *prima facie* a negligent rate of speed," creating a presumption of negligence. They were next told that such presumption was not conclusive, that it might be rebutted, but that the "burden then is upon the other party," defendant, to show that his actual speed was not negligent.

True, later on they were instructed that the burden of establishing defendant's negligence was upon plaintiff. But at best the charge concerning negligence generally and speed, plus the presumption from a rate more than 45 miles per hour, were contradictory and confusing.

It was error to instruct that the statute shifted to defendant any burden of proof. Speed greater than the statutory limit would give rise to a presumption of negligence. But it would not shift the burden of proof on the whole issue, as the jury were instructed it would. At most it could create for plaintiff only a *prima facie* case on that issue. The only burden so imposed upon defendant was that of going forward with the evidence, the burden of proof on the whole issue of negligence remaining with plaintiff.

The distinction between burden of proof of an issue and the very different onus of proceeding with evidence needs no further discussion. See McEleney v. Donovan, 119 Minn. 294, 138 N. W. 306; Presley Fruit Co. v. St. L. I. M. & S. Ry. Co. 130 Minn. 121, 153 N. W. 115; Piepho v. M. Sigbert-Awes Co. 152 Minn. 315, 188 N. W. 998; Boynton v. Simmons, 156 Minn. 144, 194 N. W. 330; 5 Wigmore, Evidence (1 ed.) §§ 2485-2489.

■ Excluded from evidence was a written statement concerning the accident, made by plaintiff to one Albrecht, within 30 days after the accident. It was considered incompetent under L. 1929, c. 289, § 4, 3 Mason Minn. St. 1938 Supp. § 5687-8, declaring that: "Any statement secured from an injured person at any time within 30 days after such injuries were sustained shall be presumably fraudulent for use in the trial of any action for damages for injuries sustained by such person or for the death of such person."

The statute does not make inadmissible as evidence any statement to which it applies. That is doubtless because of legislative reluctance to go so far into the judicial domain as to tell judges what documentary evidence is and what is not admissible in evidence. All the statute does is to create an initial presumption of fraud. By evidence it may be removed as to the whole statement (Swanson v. Swanson, 196 Minn. 298, 265 N. W. 39) or as to but a part of it. The presumption does not prevent evidentiary use of the writing. If it goes to the jury without proof of freedom from fraud, they take it subject to the presumption. If there is evidence both ways as to whether it speaks the truth or was honestly taken and transcribed, the jury should be told that it is for them to determine the character of the writing and to disregard it to the extent that they find it fraudulent, but to give it proper effect if they find it wholly genuine or bad in part only.

We can give the statute no other construction. It is to be construed so as to accomplish its purpose. But we think it would be going too far to say that the statement, if properly identified, is inadmissible for any purpose.

In this case not only was the writing itself held inadmissible, but also counsel for defense was not permitted to ask plaintiff, by way of attempted impeachment, whether he had made one of the statements appearing over his signature. That was error, as was also the exclusion of the document itself.

■ The punctured casing was offered in evidence. We do not attempt to estimate how much court time and taxpayers' money was squandered in effort to lay foundation for its admission. At inexcusably prolonged last, it developed that there was no question

of identity, nor suggestion of change since the accident, other than that the puncture had been repaired. A brief colloquy between counsel, conducted with that candor which ordinarily characterizes them, would have led to its admission without objection. Counsel for defendant was delinquent in not showing at the outset and explicitly that his witnesses, one of them defendant himself, had personal knowledge of its identity. But he was met by the unique theory, suggested for plaintiff and sustained by the court, that it was incumbent upon defendant to show what the court characterized with repeated emphasis as the "chain of possession" of the tire during the whole period from accident to trial.

The tire had been removed and repaired in Minneapolis. The thought of objections and sustaining rulings was that no sufficient foundation could be laid except by testimony not only as to genuineness, but also the absence of tampering, from every person through whose hands the casing had passed in the meantime.

There is no such rule and never has been. It was utterly immaterial in how many or whose hands the tire had been so long as it could be identified. If changes had destroyed its identity or had made the object wholly worthless or of questionable value as evidence, an entirely different situation would have been presented. If there had been alterations in the casing, they might or might not have been susceptible of honest explanation. But here were no changes and so no good reason for delay in getting the casing into evidence. Particularly in the "chain of possession" theory was there no valid objection.

This sort of thing would be disposed of by an adequate pretrial procedure such as has been long in vogue in England and has recently been adopted in some of our state courts. See Journal of American Judicature Society, Vol. XV, 180; Vol. XVI, 136; Vol. XVII, 140; Vol. XX, 247.

True, the tire finally got into evidence, so that it might well be that erroneous rulings concerning it were of themselves without prejudice.

■ On direct examination many of defendant's questions concerning the tire and other matters were ruled out as leading.

Without condoning the persistence of counsel for defendant in asking leading questions after adverse rulings, it seems appropriate to say that in some phases of a trial they are not only unobjectionable, but, within proper limits, commendable to accelerate and simplify procedure. The rule is thus stated by Dean Wigmore:

"When a witness is asked about matters preliminary to the main topics of controversy—matters essential to be brought out, and yet not themselves in controversy—such as the witness' name, age, residence, relationship to the parties, and the like, it is obvious that there is usually no danger of improper suggestion, simply because there is no motive for it." 1 Wigmore, Evidence (1 ed.) § 775.

The point is that leading questions are objectionable because of the power of suggestion and the danger that the resulting testimony will be that of the questioner rather than that of the witness. That danger decreases in proportion to lack of controversy concerning the point of the testimony, and disappears entirely if there is no controversy, as was true of the tire in this case.

Even with objections going only to matter of foundation, leading questions are properly allowed until it appears that there is a genuine controversy on the very point. There is no presumption that litigants themselves, to say nothing of disinterested third parties, such as garage mechanics or repairmen, will resort to fraudulent practices in their handling of objects which will be wanted later as evidence.

■ Because we are remanding for a new trial, some additional matters justify comment. The record discloses several rulings indicating too much restriction of testimony on the ground that questions called for a conclusion of the witness. To illustrate, defendant was asked, on his direct examination: "And did you observe whether—where you made the sudden turn, where the car had changed its direction from the tire marks?" This was excluded "as calling for the conclusion of the witness." That ruling was wrong because the question plainly asked for a fact within the personal observation of the witness.

True, mere conclusions of witnesses, other than those properly admitted as opinion testimony, are not competent. But many questions permit, or are answered by, what is in form a conclusion although in essence a statement of fact. Then, there are numerous facts (*e. g.*, some negatives, Peerless Machine Co. v. Gates, 61 Minn. 124, 63 N. W. 260) which can only be narrated by a statement in form an opinion. As to other than competent opinion, the problem is to distinguish between that mental process which is a mere conclusion and that other and different one which is recollection of facts and an attempt to state them.

Even in the field of opinion testimony, whether expert or non-expert, we long ago discarded the notion that testimony is objectionable simply because it goes to a controlling question of fact. Piche v. Halvorson, 199 Minn. 526, 272 N. W. 591; 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3326.

■ The record presents another ruling which we consider erroneous. A mechanic with "lots of experience with tires, due to wrecks," testified that he had an opinion as to "whether the air was suddenly deflated * * * or * * * gradually let out" of the punctured tire. The objection was sustained for lack of foundation and because "it is not a subject of expert testimony but pure speculation on the part of the witness."

In rulings on opinion testimony the trial judge has a wide discretion. But it is a judicial discretion to be exercised favorably to any honest course capable of eliciting relevant truth.

There were no rim cuts and no injuries to this casing other than the puncture. We think the witness in question should have been permitted to state his opinion that the tire itself indicated whether it had been suddenly or gradually deflated. Mechanics whose business it is to repair tires, especially those emerging from wrecks, have a broad experience far beyond the ordinary. Thereon, as to causation, they may sometimes come to worth-while conclusions based upon the inherent evidence of damaged casings. We see no reason why such opinions should not be admitted where, as here, there is enough foundation. Their weight will be for the jury, if any remains after the test of cross-examination.

■ Here, if ever, there should have been an instruction that there is no liability for what counsel call a "pure accident," that is, one occurring without negligence of anyone. Such an instruction was requested. Without passing on the form of the request, we do say that if the case is retried the jury should be properly and explicitly instructed on this point.

■ Proximate cause is a highly important fact issue. The jury should have been instructed that, whatever the speed, if it was not a proximate cause, that is, if it did not contribute as a "substantial factor" (Peterson v. Fulton, 192 Minn. 360, 256 N. W. 901, following Restatement, Torts, § 431; see, for additional cases, Dunnell, Minn. Dig. 1937 Supp. § 7000h) to the result, there could be no liability in the absence of some other act of negligence by defendant. Certainly defendant would not be liable, and the jury should have been so instructed, if sudden deflation of the almost new tire was considered the exclusive cause. The owner of an automobile may be negligent in using worn or damaged tires. In the absence of such circumstances, his guests assume such risk as arises from punctures and blowouts.

It will not do to conclude (at least as matter of common or judicial knowledge) that deflation of a left rear tire could not have caused the swerving to the right, whether sudden or otherwise. The result in that respect is dependent upon too many other factors, such as speed, condition of road surface, and distribution of load, to make the mechanical result predictable. There is also argument based upon defendant's admission that he made no effort to apply his brakes. It is properly addressed to triers of fact. But, again, they might well consider that, with a tire gone flat at 45 miles per hour, it was fortunate that there was no sudden application of brakes.

■ There has been, on the part of defendant, too much disregard of our rules to permit it to pass unnoticed. There are 112 assignments of error, indicating too much abstinence from the concise statement required by Rule VIII, 3(c) [200 Minn. xxviii]. Worse than that is the persistence in stating, as part of each assignment, a summary of the argument, later elaborated, in its support. There

has been no attempt to group under one assignment all challenged rulings concerning a single proposition, such as those relating to the statement signed by plaintiff. There has been some of the "useless repetition" the avoidance of which is enjoined by Rule VIII, 3(e). For this reason, no statutory costs will be allowed defendant.

Order reversed.

