## UNITED STATES v. S. B. PENICK & CO. et al.

### No. 230.

Circuit Court of Appeals, Second Circuit.

June 17, 1943.

---

Benjamin P. DeWitt, of New York City (Sidney Pepper, of New York City, of counsel), for appellants.

Mathias F. Correa, U. S. Atty. (Robert Roy Dann and Samuel H. Reis, Asst. U. S. Attys., both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The appellants were convicted of violating the Food and Drugs Act, 21 U.S.C.A. § 1 et seq., by making three interstate shipments of ephedrine sulfate which did not conform to the standards of the United States Pharmacopoeia. With respect to each shipment one count of the information charged that the drug was adulterated and another count charged that it was misbranded. The shipments were made on November 1, November 17 and December 14, 1937, respectively, to Premo Pharmaceutical Laboratories, Inc., of New York City, pursuant to a contract of purchase made by Premo with R. Hillier's Son Corporation. The latter corporation was a wholly owned subsidiary of S. B. Penick & Company. The defendants stipulated that for purposes of the trial the two corporations might be considered as one. It will not be necessary in this opinion to differentiate between them, and we shall refer to them collectively as Penick.

This appeal raises only two questions, each of which related to rulings of the trial judge on the admissibility of evidence received on behalf of the government. The first has to do with the issue of the identity of the material shipped by Penick and the material analyzed by Dr. Reznek, the government chemist, and found by him not to conform to U. S. P. standards for ephedrine sulfate. The material analyzed by Reznek was contained in small bottles (exhibits 17, 18 and 19) which an agent of the Food and Drug Administration had seized in Premo's laboratory on April 23, 1940. Exhibit 19 relates to the first Penick shipment, exhibit 18 to the second and exhibit 17 to the third. The proof of the government to tie up the contents of these exhibits with the Penick shipments was as follows: Dichter, a chemist in Premo's employ, testified that when the November 1st shipment arrived he took a sample from the containers in which it came and half filled a small bottle on which he placed a label with Premo's order number. After testing a portion of the sample,[1] he closed

---

[1] Dichter's test was not to determine whether the Penick shipment met U. S. P. requirements but whether it contained ephedrine sulfate.

the bottle with a screw cap top, without any seal, and placed it in a box labelled "Ephedrine Sulfate" on a shelf reserved for the filing of samples. When the second Penick shipment arrived, Premo's receiving clerk, Glaser, took a sample from the jars in which it came, put the same into a small bottle on which he placed a label with Premo's order number, closed the bottle with a screw cap top, and deposited it on a table in the laboratory. Glaser testified that he followed exactly the same procedure with respect to the third shipment. Following tests by Dichter [2] these bottles were placed in the sample box above mentioned. Dichter testified that the sample bottles were not taken out of the laboratory until they were seized by Inspector Greenlie in 1940. The only persons who had access to the samples were Premo's three chemists and their superior officers, Mr. Blackman and Mr. Strauss. One of the chemists had been discharged for "irregularities," the nature of which do not appear. Upon the foregoing proof the bottles of samples were admitted in evidence over Penick's objection.

■ The ruling was right. The appellants contend that the prosecution failed to prove that the contents of the bottles in 1940, when Reznek made his analyses, were the same as when they were half-filled with samples from the Penick shipments in 1937. It is true that before a physical object connected with the commission of a crime can properly be admitted in evidence, there must be a showing that such object is in substantially the same condition as when the crime was committed. 2 Wharton, Criminal Evid., 11th Ed., § 757. But there is no hard and fast rule that the prosecution must exclude all possibility that the article may have been tampered with. See Lestico v. Kuehner, 204 Minn. 125, 283 N.W. 122, 125. In each case the trial judge before he admits it in evidence must be satisfied that in reasonable probability the article has not been changed in important respects. Wigmore, Evidence, 3d Ed., § 437(1); 32 C.J.S., Evidence, § 607. In reaching his conclusion he must be guided by the nature of the article, the circumstances surrounding the preservation and custody of it, and the

likelihood of intermeddlers tampering with it. Here the samples were taken in the ordinary course of business for the very purpose of being retained as samples; they were put in the usual place where samples were kept to remove them from accident or meddling and there they remained, so far as appear, undisturbed. We think this showing was sufficient to justify admission in evidence of the bottles and their contents and that it was for the jury to decide how likely it was that some other substance had been substituted for what was originally put in the bottles. Pennsylvania R. Co. v. Fox & London, 2 Cir., 93 F.2d 669, certiorari denied 304 U.S. 566, 58 S.Ct. 949, 82 L.Ed. 1532; Hanify Co. v. Westberg, 9 Cir., 16 F.2d 552.

■ It is urged that there was evidence in the government's case that the contents had been tampered with because each bottle was half filled in 1937 but contained a lesser amount in 1940. The differences in gram content were adequately accounted for. Other discrepancies are also asserted by the appellants based principally on variations between the findings of Dr. Seil and those of Dr. Reznek. These, too, we think were adequately explained. In any event they go rather to the weight of the evidence than to the admissibility of the exhibits.

■ The other rulings on evidence challenged by the appellants relate to oral and written statements made by Dr. Lewis. He was employed by Penick as director of sales of certain of its products and signed on its behalf the contract with Premo. His oral statements were part of a conversation which Mr. Blackman, the president of Premo, testified he had with Lewis in December 1937. His written statements were letters addressed by Lewis to Premo on May 27 and June 1, 1938. The purport of both the conversation and the letters was that the ephedrine sulfate which Penick had shipped to Premo was defective. The oral admissions of Lewis were made in the course of a business conversation with Premo in adjusting its claim that the merchandise delivered by Penick was defective. The settlement to which he agreed was later carried out. The letters referred

---

[2] The record of Dichter's test of the second shipment sample was not located. He testified that his test of the sample taken from the third shipment indicated that "it did not conform to the Pharmacopoeia as far as the total amount of ephedrine alkaloid was concerned. There was not enough." Dichter's tests were received merely for identification of the article, not to prove nonconformity with U. S. P. standards.

to the settlement and confirmed his prior oral admission of defect. We can see no reason to doubt his authority to write to a customer about defects in goods as to which he made the contract; at the least he had apparent authority. An agent's declarations within the scope and in the course of his agency are admissible against his principal. Hamburg-American Steam Packet Co. v. United States, 2 Cir., 250 F. 747, 765, certiorari denied 246 U.S. 622, 38 S.Ct. 333, 62 L.Ed. 927; Johnson v. J. H. Yost Lumber Co., 8 Cir., 117 F.2d 53, 59; Wigmore, Evidence, 3rd ed. § 1078.

Finding no error in the challenged rulings we affirm the judgment.