Toni Lee FEHLING, Trustee for the heirs and next of Kin of Robert Wesley Fehling, decedent, Appellant,

v.

Alexander A. LEVITAN, M.D., Unity Hospital, a division of Health Central, Inc., Respondents.

No. C6-85-331.

Court of Appeals of Minnesota.

March 4, 1986.

Review Denied April 24, 1986.

Robert Rischmiller, Rischmiller, Wasche & Knippel, Minneapolis, for appellant.

James W. Kenney, Audrey Zibelman, Geraghty, O'Loughlin & Kenney, St. Paul, for Alexander A. Levitan, M.D.

Lynn G. Truesdell, Charles E. Lundberg, Bassford, Heckt, Lockhart & Mullin, P.A., Minneapolis, for Unity Hosp., a div. of Health Central, Inc.

Heard, considered and decided by LANSING, P.J., and LESLIE and HUSPENI, JJ.

## OPINION

LANSING, Judge.

The heirs of Robert Fehling brought this medical malpractice action against Dr. Alexander Levitan and Unity Hospital for negligently causing Fehling's death. The jury found by special verdict that the defendants were negligent but that their negligence did not cause Fehling's death. On appeal the plaintiffs argue the jury instruction on causation was erroneous and the special verdict is irreconcilable. We affirm.

## FACTS

Robert Fehling was 33 years old when he became ill in April 1980. He went to see his physician, Dr. Levitan, on April 30 and complained of fever, cough, chills, and aching muscles. Dr. Levitan ordered a chest x-ray and prescribed an antibiotic to treat what he diagnosed as viral bronchitis.

The next morning Fehling went to the emergency room at Unity Hospital. He was vomiting and had a rash. His pulse and respiration were rapid. He was sweating heavily, short of breath, and extremely apprehensive. His blood pressure readings in the emergency room were 78/0 and 50/0. Dr. Levitan saw Fehling and admitted him to the hospital to observe what Levitan considered to be an allergic reaction to the antibiotic. The chest x-ray taken the day before was considered normal by the radiologist who interpreted it.

Fehling's symptoms worsened during the day. The nursing staff called Dr. Delfin Cruz, a house physician for Unity Hospital, to evaluate Fehling. Cruz ordered an electrocardiogram, which showed an electrical disturbance called right bundle branch block. Cruz conferred with a pulmonary specialist and ordered Fehling transferred to the coronary care unit (CCU). Later that evening Dr. Levitan transferred Fehling out of the CCU and back to the floor. A chest x-ray taken that day, in contrast to the normal x-ray the previous day, showed extensive infiltration of Fehling's lungs. Levitan changed his diagnosis to viral bronchopneumonia.

The next day, May 2, Fehling continued to be acutely short of breath. Dr. John Carlson, another Unity house physician, evaluated Fehling that night and asked the nursing staff to order a test for arterial blood gases. The nurses sought permission from Levitan, who refused the request. Levitan testified that he had or-

dered the test earlier, but canceled it because technicians were unable to obtain an arterial blood sample. Fehling, a weight lifter, had heavily muscled arms that made it difficult to reach the artery.

At about 8:30 a.m. on May 3, Robert Fehling died. His parents testified that they repeatedly requested treatment for his worsening condition but that their pleas for help were ignored. They also testified that the efforts to resuscitate their son were haphazard. An autopsy performed that day showed that Fehling died of acute viral myocarditis (an infection of his heart muscle) and congestive heart failure.

The plaintiffs' experts at trial testified that Fehling was seriously ill and going into shock when he went to the emergency room on May 1. Charles Pexa, M.D., the director of emergency medicine at North Memorial Hospital, testified that Levitan was negligent in failing to admit Fehling directly to the CCU, in failing to obtain the test for arterial blood gases, and in later removing Fehling from the CCU. Raymond Scallen, M.D., the medical director of the CCU at Abbott-Northwestern Hospital in Minneapolis, testified that both Levitan and Unity Hospital negligently cared for Fehling.

The crucial issue at trial was whether Fehling would have survived the illness even if he had received the best possible medical care. The experts all agreed that there is no "cure" for viral myocarditis and that the only treatment is supportive care to allow the body's immune defenses time to combat the virus. Dr. Pexa testified that if treated properly, Fehling may have survived the myocarditis. Dr. Scallen testified that Fehling's chances of survival were high.

In contrast, the defense experts testified that the virus had damaged so much of Fehling's heart by the time he sought treatment that there was virtually no chance he would have survived. Drs. Cruz and Carlson, the house physicians who disagreed with Levitan's treatment of Fehling, testified that no medical care would have prevented Fehling's death. Patholo-gist Richard Lynch of Unity Hospital, who performed the autopsy, testified that 50 percent of Fehling's heart muscle was dead and Fehling could not have survived. Steven Long, M.D., the chief of medicine at Unity when Fehling was there, testified that Fehling would have died even if he had been directly admitted to the CCU.

The principal defense witness was Jesse Edwards, M.D. Edwards is an internationally recognized pathologist at the University of Minnesota Medical School who has written hundreds of professional articles and numerous pathology textbooks, many of them on cardiac pathology. Edwards analogized the virus to a tornado, saying it swept through Fehling's heart muscle one to two weeks before he died. He testified there was no evidence of ongoing disease and the extensive damage to Fehling's heart occurred five to 13 days before he was admitted to the hospital. In Edwards' opinion, Fehling was admitted in the end stage of the disease and had no chance of survival without a heart transplant, which was unlikely because Fehling didn't have time to wait for a donor.

The trial court gave the following causation instruction:

In Question # 2 you are asked to consider whether such negligence that you may have found as to Dr. Levitan was a direct cause of the death of Robert Fehling, Jr., and in Question # 4 whether such negligence that you may have found as to Unity Hospital was a direct cause of his death.

A direct cause is a cause which had a substantial part in bringing about the death of Robert Fehling, Jr., either immediately or through happenings which follow one after another, and without which cause the death would not have occurred. *Before you can find that negligent conduct was a direct cause of the death of Robert Fehling, Jr., you must find that his death would not have occurred when it did on May 3, 1980, but for the negligent conduct, and that such negligent conduct played a*

*substantial part in bringing about the death.*

Question #'s 2 and 4, should you reach them, do not call upon you to determine whether negligent conduct was the sole cause of death, but rather whether such negligent conduct was a direct cause of death. There may be more than one direct cause of death, as I have explained that term. *When the effects of negligent conduct of a person or persons and of a force of nature actively work at substantially the same time to cause a death, each may be a direct cause of death.*

(Emphasis added). This instruction modified the standard "substantial factor" instruction by adding the "but for" causation test. *See* JIG II, 140 G–S. The plaintiffs objected to the modified instruction.

The jury found that Levitan and Unity Hospital were negligent but that their negligence was not a direct cause of Fehling's death. The jury assessed damages at $1 million.

### ISSUES

1. Was the causation instruction prejudicially erroneous?

2. Are the special verdict answers inconsistent?

### ANALYSIS

#### I

The plaintiffs claim the trial court's use of the "but for" causation instruction was prejudicial error. It is well settled that

the charge of the trial court must be viewed in its entirety and from a practical and commonsense point of view. The trial court is allowed considerable latitude in the language used, and a new trial will not be granted where requested instructions are refused when the general charge fairly and correctly states the applicable law. All that is required is that the charge as a whole convey to the jury a clear and correct understanding of the law. It is unnecessary that every possible opportunity for misapprehension

be guarded against. If the charge fairly lays down the law of the case, it is sufficient.

*Cobb v. Aetna Life Insurance Co.,* 274 N.W.2d 911, 916 (Minn.1979) (quoting *Cameron v. Evans,* 241 Minn. 200, 208, 62 N.W.2d 793, 798 (1954)).

The Minnesota Supreme Court adopted the "substantial factor" causation formulation in *Lestico v. Kuehner,* 204 Minn. 125, 283 N.W. 122 (1938). In general, the "but for" and "substantial factor" formulations produce the same legal conclusion. *See Prosser and Keeton on the Law of Torts* § 41 at 268 (5th ed.1984). The substantial factor rule was developed primarily for cases in which application of the "but for" rule would allow each defendant to escape responsibility because the conduct of one or more others would have been sufficient to produce the same result. *Id.*

The plaintiffs argue that this case presents the situation described by Prosser, where the "but for" instruction is improper because both Dr. Levitan's and the hospital's negligence were sufficient to cause Fehling's death. In another case this argument might prevail; however, Dr. Levitan and the hospital presented a joint defense. The entire defense theory was that neither Dr. Levitan nor the hospital was negligent and that no treatment could have saved Fehling's life. Neither defendant attempted to evade liability based on the actions of the other. Under these facts there is virtually no chance that the "but for" instruction had the effect of canceling out the defendants' negligence.

The plaintiffs also argue that the "but for" instruction is inconsistent with the concurring cause instruction, again on the basis that the jurors could not find concurrent causes if the "but for" instruction allowed both defendants to escape responsibility for their negligence. Because we conclude that the "but for" instruction did not have this effect in this case, we cannot say that it was inconsistent with the concurring cause instruction.

Both the "but for" and "substantial factor" formulations convey a literally correct statement of the law. *See Cornfeldt v. Tongen,* 295 N.W.2d 638, 640 (Minn.1980) (plaintiff must show it was "more probable than not that but for the operation she would have recovered"); *Prosser and Keeton on Torts* § 41, at 268 (in the great majority of cases, the substantial factor test produces the same legal conclusion as the but-for test). The trial court believed that the "substantial factor" test did not adequately address the defense theory that Fehling would have died without any negligent conduct. The combined instruction does not misstate the applicable law, but it is preferable to use the standard instruction to avoid the possibility of favoring a party or confusing the jury. *See* JIG II, 140 G–S; *Fallin v. Maplewood-North St. Paul District No. 622,* 362 N.W.2d 318, 322 (Minn.1985); *Sandhofer v. Abbott-Northwestern Hospital,* 283 N.W.2d 362, 367 (Minn.1979). Under the general instruction, the defendants could properly argue that, if Fehling would have died despite any negligence on their part, their negligence could not have been a substantial factor in causing his death. *Cf.* Restatement (Second) of Torts § 432 (1965).

◼ Nonetheless, we conclude that use of the "but for" instruction was not prejudicial error in this case. We have carefully reviewed the record and are left with the firm impression that the trial was fair, the instructions as given conveyed a correct statement of the law, and the verdict is supported by the evidence. The trial court's memorandum accompanying the order denying a new trial provides that even if the causation instruction were erroneous, the error was harmless because the court would have been justified in directing a verdict for the defendants on this issue. There were expert opinions squarely on both sides. Although the weight of the evidence favored the defendants, this case turned on credibility rather than quantity. It would have been reversible error to direct a verdict.

## II

◼ The special verdict form asked, "What sum of money will fairly compensate the next of kin of Robert Fehling, Jr., for their *pecuniary loss from his death?*" In the court's oral instructions on damages the court stated several times that the jury was to determine damages *"for such pecuniary loss as resulted from [Fehling's] death."* The court said once that "damages are limited to such amount of *pecuniary loss attributable to negligent conduct of defendant* or defendants, and do not include such amount of pecuniary loss which you may find was attributable solely to the illness." Plaintiffs did not object to the latter instruction. They now claim that the special verdict answers, finding no negligence but assessing damages at $1 million, are inconsistent because the jury was given the oral instruction that damages were limited to pecuniary loss attributable to the defendants' negligence. A written copy of the oral instructions went to the jury room.

The oral instructions on damages are not consistent. The jury was told several times to determine "damages from pecuniary loss." However, the jury was also told that damages were limited to pecuniary loss "attributable to * * * negligent conduct." The jurors were obviously confused because they asked the trial court during deliberations, "If answers to Questions 2 and 4 [the causation questions] are no, is the answer to Question No. 6 [damages] automatically zero?" The judge instructed them to answer the damages question, and the verdict was returned within an hour.

A verdict is to be liberally construed to give effect to the intention of the jury and to harmonize answers to interrogatories if it is possible to do so. The test is whether the answers can be reconciled in any reasonable manner consistent with the evidence and its fair inferences. *Verhel v. Independent School District No. 709,* 359 N.W.2d 579, 592 (Minn.1984). The verdict must be viewed in light of the instructions as well. *Id.*

The instructions may have been inconsistent, but the jury's answers to the special verdict questions are not. The form asks the jury whether the defendants were negligent and what amount would compensate the family for Fehling's death. Even assuming there is an inconsistency when viewed in light of the oral instructions, the verdict could be reconciled on the theory that the jury disregarded the inconsistent instruction and relied on the instructions that were consistent with the verdict form.

## DECISION

The combination of the "but for" and "substantial factor" caustation tests was not prejudicial error under the circumstances of this case. The jury verdict was not inconsistent or irreconcilable.

Affirmed.

LESLIE, J., dissents.

LESLIE, Judge (dissenting).

In this multi-defendant wrongful death action, I believe it was prejudicial error for the trial judge to give the jury a "but for" causation instruction. Accordingly, I respectfully dissent from Part I of the majority opinion.

The trial court instructed the jury not only that plaintiff must prove that each defendant's negligence played *a substantial part* in bringing about the death of Fehling, but also that before causation on the part of Dr. Levitan could be found, the jury must find that Fehling would not have died *but for* his negligence. The same test was to be applied to Unity Hospital.

The jury was thus faced with a dilemma when answering the special verdict questions. Having found Dr. Levitan negligent, the jury was required to answer the question of whether his negligence constituted a direct cause of the death. Even if the jury found that Dr. Levitan's negligence played a substantial part in causing the death, it could not be considered to be a direct cause under the "but for" instruction if Unity Hospital's negligence was also sufficient to cause the death by itself. As a result, if the jury found that each of the defendant's negligence acting at the same time was sufficient to independently cause the death, then under the "but for" instruction, neither of the defendant's negligence could be found to be the direct cause.

It is for the purpose of avoiding this problem that the "substantial factor" test was adopted and applied in cases where two or more causes are sufficient to cause a death. *See Prosser and Keeton on the Law of Torts* § 41, at 265–68 (5th ed.1984). At trial, plaintiff objected to the court's decision to give the "but for" instruction. The Minnesota Jury Instruction Guides, adopting the view in Restatement (Second) of Torts § 431 (1965), set forth instructions on direct cause and on concurring cause, neither of which include the "but for" test. *See* JIG II, 140 G–S; JIG II, 141 G–S. The trial court's instructions, however, added the "but for" test to the "substantial factor" test. The instruction as given further complicated an already difficult and confusing rule of law, and as such constituted reversible error.

I also must dissent from Part II. The negative answer given by the jury to the causation question is inconsistent with the jury's award of $1 million in response to the damages question. The instruction given by the judge stated that damages were limited to pecuniary loss "attributable to negligent conduct" of the defendants. The jury, having answered that the defendants were negligent, most likely intended that the plaintiff recover the $1 million damage award. If the jury had intended that the plaintiff recover no damages, the answer to the damages question would have been zero dollars.

I would grant a new trial.